UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JAMES FONTANO, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 12-CV-3042 |
| | ) | |
| S.A. GODINEZ, et al., | ) | |
| Defendants. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, a former inmate in the Illinois Department of Corrections, pursues claims arising from alleged assaults by his former cellmate and alleged retaliation against Plaintiff for reporting the assaults.  All Defendants have been served and have appeared through counsel.  Accordingly, the status conference set for July 2, 2012 will be cancelled in lieu of this order, which rules on Defendants' motions to dismiss and sets scheduling deadlines.

## Motion to Dismiss Standard

Federal notice pleading requires a "short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Factual allegations must give enough detail to give "'fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>EEOC v. Concentra Health Serv., Inc.</u>, 496 F.3d 773, 776 (7th Cir. 2007)(quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007))(add'l citation omitted). The factual "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" <u>Id.</u> (quoting <u>Bell Atlantic</u>, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009), *citing* <u>Bell Atlantic</u>, 550 U.S. at 555-56.

## Allegations

The Court recounts only those allegations necessary to resolve the pending motions to dismiss.

In or around April, 2011, Plaintiff began serving a one-year sentence for parole violations. He was housed at the Pittsfield Work Camp at Jacksonville Correctional Center, a minimum security prison where he understood he would be spending his entire sentence. However, the next month he was transferred to Logan Correctional Center, a medium security prison, due to an alleged minor disciplinary charge.

At Logan Correctional Center, Plaintiff was placed in a wing "reserved for gang-affiliated inmates with disciplinary problems, and known to be the most dangerous area in the entire prison." (Complaint, d/e 1, ¶ 25). Plaintiff's young age, Caucasian race, slight size, lack of gang affiliation, relative lack of criminal history, and inexperience with the prison setting allegedly made him a prime target for assault by other inmates. Despite Plaintiff's obvious and known vulnerability, he was assigned to a cell with "an imposing 185-pound violent offender and known Gangster Disciple affiliate, who was serving a twenty-year sentence for armed and aggravated battery and had a history of

instituting fights within the prison." (Complaint, d/e 1, ¶ 25).

On or about August 3 and 4, 2011, Plaintiff's cellmate beat and raped Plaintiff multiple times. The cellmate attempted to rape Plaintiff again on August 5, 2011, but Plaintiff was able to run away and report the assaults to officers. (Complaint, d/e 1, ¶ 28).

Plaintiff's report of the assaults allegedly set off a concerted effort by Defendants to retaliate against Plaintiff and to conceal the assaults. The alleged retaliation and cover-up included intimidating Plaintiff into recanting, accusing and punishing Plaintiff for purportedly lying about the assault, refusing to allow Plaintiff to take a polygraph, and relying on false and unreliable polygraph results.

Defendant Dr. Obaisi conducted a medical examination on Plaintiff in response to Plaintiff's report of the assaults. Dr. Obaisi allegedly:

> performed a faulty medical examination and rape kit on Plaintiff. Despite the fact that Plaintiff had been anally raped several times in the previous three days, attacks that left seminal fluid in Plaintiff's rectum, Obaisi reported to prison authorities that he could find "no trauma" or other physical evidence on Plaintiff's body to suggest rape. Obaisi also placed sterile test kit swabs directly on the unsterile countertop, told inappropriate jokes throughout the

examination, and accused Plaintiff of lying about being assaulted. By failing to provide Plaintiff with proper medical treatment and submitting a false report to prison authorities, Obaisi facilitated, approved, and promoted the Defendants' scheme to retaliate against Plaintiff and deprive him of his constitutional rights.

(Complaint, d/e 1, ¶ 31).

Plaintiff filed this case in February, 2012, pursuing six claims. The first four claims are federal claims under 42 U.S.C. § 1983: failure to protect; retaliation for the exercise of First Amendment rights; civil conspiracy; and, failure to intervene. The other two claims are state law claims: intentional infliction of emotional distress and state law civil conspiracy.

## ANALYSIS

I.  **The determination of whether state sovereign immunity bars the state law claims against the IDOC Defendants is premature. Therefore, the IDOC Defendants' motion to dismiss will be denied (d/e 19).**

Defendants Godinez, Dawson, Jennings, Call, Standley, Fishel, Bender, and Simmons (the "IDOC Defendants") argue that state sovereign immunity bars the state claims from proceeding against them in

any court except the Illinois Court of Claims.  They cite 705 ILCS 505/8(d), which, in relevant part, grants the Illinois Court of Claims "exclusive jurisdiction" to hear state tort claims against the State.

Reasonable minds might debate whether Defendants' argument is a jurisdictional one or an affirmative defense subject to waiver, but the debate will not affect the outcome here since Defendants have not waived the argument.  *Compare* Fields v. Wharrie, 672 F.3d 505, 518 (7th Cir. 2012)(district court did not err in retaining jurisdiction over state law claims against state employee because Rodriguez "makes clear that a state employee's sovereign-immunity defense does not impact a federal court's jurisdiction over a case."), *with* Turner v. Miller, 301 F.3d 599, 602-03 (7th Cir. 2002)(concluding that district court "improperly exercised subject-matter jurisdiction" over state law negligence claim against state employee because Illinois law granted exclusive jurisdiction to Illinois Court of Claims), *and* Richman v. Sheahan, 270 F.3d 430, 441 (7th Cir. 2001)(Illinois statutes "vest[] jurisdiction over state tort claims against the state in the Illinois Court of Claims."); Fritz v. Johnston, 209 Ill.2d

302, 310 (2004)("[A]ll claims against the state for damages sounding in tort must be brought in the Court of Claims—no other tribunal, including our circuit courts, has jurisdiction of any such claim.").  Either way, the Court must determine whether Plaintiff's state law tort claims against the individual Defendants are essentially claims against the State of Illinois.  If they are, the claims must be dismissed.

"[S]tate immunity rules apply to . . .  state law claims in federal court."  <u>Richman v. Sheahan</u>, 270 F.3d 430, 441 (7th Cir. 2001).  A state law claim against a state employee is essentially a claim against the State of Illinois when:

> there are (1) no allegations an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of state employment; and (3) where the complained-of actions involve matters ordinarily within the employee's normal and official functions of the State . . . .

<u>Healy v. Vaupel</u>, 133 Ill.2d 295 (1990)(citing appellate court).  Also relevant is whether a "'judgment for the plaintiff could operate to control the actions of the State or subject it to liability.'"  <u>Richman v. Sheahan</u>,

270 F.3d 430, 441 (7th Cir. 2001). "Sovereign immunity affords no protection, however, when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority, and in those instances an action may be brought in circuit court." Healy, 133 Ill.2d 295, 375 (1990).

Reciting these standards is easier than applying them. For example, the Seventh Circuit has found that state law claims are effectively against the State in cases involving malicious prosecution, negligent exposure to electrical wires, high speed police pursuits, and restraining an individual during a court hearing pursuant to a judge's order. See, e.g., Brooks v. Ross, 578 F.3d 574 (7th Cir. 2009)(malicious prosecution claim); Turner v. Miller, 301 F.3d 599 (7th Cir. 2002)(prisoner's exposure to electrical wires); Richman v. Sheahan, 270 F.3d 430 (7th Cir. 2001)(restraint during court hearing); Magdziak v. Byrd, 96 F.3d 1045 (7th Cir. 1996)(high-speed police chase). On the other hand, the Seventh Circuit has also remarked that federal courts have supplemental jurisdiction over state law claims against prosecutors in their personal capacities.

Rodriguez v. Cook County, Ill., 664 F.3d 627, 631-32 (7th Cir. 2011).

Additionally, the Illinois Supreme Court has noted that state sovereign immunity does not protect state employees from state law claims arising from acts that violate constitutional or statutory law. *See, e.g.,* Healy, 133 Ill.2d 295; Fritz v. Johnston, 209 Ill.2d 302 (2004)(state sovereign immunity did not apply to state law civil conspiracy claim against individual state employees, where employees allegedly violated state law by making false accusations against Plaintiff to Illinois State Police); *see also* Stevens v. Dewitt County, 2012 WL 1066890 * 7 (C.D. Ill. 2012, Judge Myerscough)(not reported in F.Supp.2d)(declining to dismiss state law malicious prosecution claim on state sovereign immunity grounds, with leave to renew the argument at summary judgment).

Given the above discussion, the Court believes that this issue should be decided on a more developed record and more thorough briefing. Accordingly, Defendants motion will be denied with leave to renew at the summary judgment stage.

II.   **Plaintiff's allegations are sufficient to state claims against Defendant Dr. Obaisi under federal notice pleading standards.**

9

Accordingly, Dr. Obaisi's motion to dismiss will be denied.

## A. First Amendment Retaliation Claim

A First Amendment retaliation claim requires an "activity protected by the First Amendment," a "deprivation that would likely deter First Amendment activity in the future," and, a motive to inflict that deprivation because of the First Amendment activity. Gomez v. Randle, — F.3d —, 2012 WL 1660975 * 6 (7th Cir. 2012)(internal cites and quotations omitted).

Dr. Obaisi argues that the retaliation claim against him must be dismissed because "nothing in Plaintiff's complaint demonstrates that Plaintiff's reporting of the rape incident was a substantial or motivating factor behind any of Dr. Obaisi's alleged conduct." (d/e 25, p. 5). The Court disagrees. Plaintiff alleges that "[b]y failing to provide Plaintiff with proper medical treatment and submitting a false report to prison authorities, Obaisi facilitated, approved, and promoted the Defendants' scheme to retaliate against Plaintiff and deprive him of his constitutional rights" to report the assaults. (Complaint, d/e 1, ¶ 31). In the Court's

opinion, these allegations are sufficient to state a First Amendment retaliation claim against Dr. Obaisi.

Dr. Obaisi contends that no allegations suggest that he was aware of Plaintiff's report of the assaults, but a plausible inference of knowledge arises based on Dr. Obaisi's purported examination in response to that report. Dr. Obaisi further advances that Plaintiff "does not allege that the [seminal] fluid was still present when Obaisi examined him . . . ." (d/e 25, p. 6). However, Plaintiff specifically alleges that "[d]espite the fact that Plaintiff had been anally raped several times in the previous three days, attacks that left seminal fluid in Plaintiff's rectum, Obaisi reported to prison authorities that he could find 'no trauma' or other physical evidence on Plaintiff's body to suggest rape." (Complaint, d/e 1, ¶ 31). These allegations imply that seminal fluid still existed in Plaintiff's rectum at the time of the examination. In any event, the time for arguing inferences is at the summary judgment stage. Plaintiff alleges that Dr. Obaisi intentionally and knowingly failed to document existing physical evidence of Plaintiff's rape to help cover up the rape and to

retaliate against Plaintiff for reporting the assaults.  *See* Fed. R. Civ. P. 9(b)("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").  A developed factual record will reveal whether the evidence supports these allegations .

### B.  Intracorporate Conspiracy Doctrine

Dr. Obaisi argues that the intracorporate conspiracy doctrine bars Plaintiff's § 1983 civil conspiracy claim against him.  "[U]nder the intracorporate conspiracy doctrine a conspiracy cannot exist solely between members of the same entity."  <u>Payton v. Rush-Presbyterian-St. Luke's Medical Center</u>, 184 F.3d 623, 632 (7th Cir. 1999)(citing <u>Wright v. Illinois Dept. of Children & Family Services</u>, 40 F.3d 1492, 1508 (7th Cir.1994))("'managers of a corporation jointly pursuing its lawful business do not become "conspirators" when acts within the scope of their employment are said to be discriminatory or retaliatory.'")(quoted cite omitted).

However, Plaintiff correctly points out that Dr. Obaisi works for a different entity than the other Defendants.  Dr. Obaisi is employed by

Wexford Health Sources, Inc., not the State of Illinois. Dr. Obaisi cites

no legal support for his assertion that he was an "agent" of the Illinois

Department of Corrections or that he should be considered part of the

same "entity" as the other Defendants for purposes of the intracorporate

conspiracy doctrine. The case he cites, Wright v. DCFS, 40 F.3d 1492,

1508 (1994), involved employees of the same state agency–the "same

collective entity." Accordingly, the Court need not reach the debate over

whether the doctrine would apply if Dr. Obaisi and the other Defendants

were actually employed by the same entity.

Dr. Obaisi also argues that Plaintiff fails to state a § 1983

conspiracy claim. The Court disagrees. Plaintiff alleges that Dr. Obaisi

knowingly and intentionally created a false medical report in order to

help the other Defendants cover up those assaults and retaliate against

Plaintiff for bringing those assaults to light.[1] *See* Geinosky v. City of

Chicago, 675 F.3d 743, 749 (7th Cir. 2012)(conspiracy claim stated

---

[1]According to response to the motion to dismiss, "Dr. Obaisi conducted an intentionally substandard physical examination and drafted a false medical report in order to conceal evidence of the rapes; that Dr. Obaisi then gave this report to prison authorities, knowing it would be used in an investigation of Mr. Fontano's allegations." (d/e 26, p. 9).

where, though "only rather conclusory direct allegations of conspiracy," allegations of harassment allowed plausible inference of conspiracy: "Under <u>Twombly</u>, all plaintiff needed to allege was a plausible account of a conspiracy.").  In the Court's opinion, these allegations are sufficient to state a plausible § 1983 conspiracy claim.  This is not the kind of "vast, encompassing conspiracy" or complex litigation that might require more detailed factual allegations.  *Compare with* <u>Cooney v. Rossiter</u>, 583 F.3d 967 (7th Cir. 2009)("plaintiff must meet a high standard of plausibility" where the claim "may be paranoid pro se litigation, arising out of a bitter custody fight and alleging . . . a vast, encompassing conspiracy"); <u>Twombly</u>, 550 U.S. 544 (complex antitrust litigation).

## C.  Failure to Intervene and Personal Responsibility

Dr. Obaisi argues that the failure to intervene claim is too conclusory, allowing no plausible inference that he knew the other Defendants intended to harm Plaintiff, or that he had a realistic opportunity to prevent that harm.  However, Plaintiff alleges that Dr. Obaisi intentionally created a false medical report, knowing that the

other Defendants would use the report to punish Plaintiff for reporting the assaults. The Court does not know what more needs to be alleged. Dr. Obaisi's realistic opportunity to prevent the harm arguably would have been to inform Defendants that the report was false. Plaintiff may have an uphill battle proving these allegations, but proof is not required at this stage. For the same reasons, a plausible inference of personal responsibility arises against Dr. Obaisi.

### D. Intentional Infliction of Emotional Distress

Dr. Obaisi argues that the allegations against him do not allow an inference that he engaged in conduct sufficiently "extreme and outrageous" to give rise to a claim for the intentional infliction of emotional distress. He contends that, at most, the allegations permit only an inference of negligence, and that no concrete factual allegations suggest he knew his conduct would inflict severe emotional distress.

> In Illinois, a plaintiff must satisfy three requirements for a showing of intentional infliction of emotional distress: "(1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional

distress and (3) the conduct must in fact cause severe emotional distress." <u>Honaker v. Smith</u>, 256 F.3d 477, 490 (7th Cir.2001). Necessarily, however, "the tort does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." <u>Id.</u> (quoting McGrath v. Fahey, 126 Ill.2d 78, 127 Ill.Dec. 724, 533 N.E.2d 806, 809 (1988)). This standard is quite high. In order to meet the threshold for intentional infliction of emotional distress, the defendant's conduct must extend beyond the bounds of human decency and be considered intolerable in a civilized community. <u>Id.</u>; <em>see also</em> <u>Kolegas v. Heftel Broad. Corp.</u>, 154 Ill.2d 1, 180 Ill.Dec. 307, 607 N.E.2d 201, 211 (1992).

<u>Lewis v. School Dist. # 70</u>, 523 F.3d 730, 746-67 (7th Cir. 2008).

Plaintiff alleges more than negligence or gross negligence. He alleges that he was anally and orally raped, and that physical evidence of those rapes existed when he was examined by Dr. Obaisi, including seminal fluid in Plaintiff's rectum. According to Plaintiff, "Dr. Obaisi, the only prison official with the authority and expertise to physically corroborate Mr. Fontano's rape allegations, entered into an agreement with the other defendants to undermine [Plaintiff's] claims." (d/e 26, p. 15). In furtherance of this agreement, Dr. Obaisi allegedly intentionally created a false medical report and intentionally failed to collect physical evidence of the assault. In the Court's opinion, these allegations are

sufficient to state a claim against Dr. Obaisi for the intentional infliction of emotional distress.  As Plaintiff points out, he was at Dr. Obaisi's mercy regarding the physical corroboration of the assaults.  *See* McGrath v. Fahey, 126 Ill.2d 78, 86-87 (1998)("the more control which a defendant has over the plaintiff, the more likely that the defendant's conduct will be deemed outrageous.").

### E.  State law civil conspiracy claim

> To succeed on such a claim, a plaintiff must prove the following elements: "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in furtherance of which one of the conspirators committed an overt tortious or unlawful act."

Miller v. Hecox, 2012 Ill. App. (2d) 110546, — N.E.2d — (2d Dist. 2012)(quoting Fritz v. Johnston, 209 Ill.2d 302, 317 (2004).  Federal notice pleading standards apply to state claims proceeding in federal court.  Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Financing, 536 F.3d 663, 670 (7th Cir. 2008)

Dr. Obaisi argues that no factual allegations plausibly suggest an

agreement between Dr. Obaisi and the other Defendants to conspire against Plaintiff. He contends that the allegations suggest only that his alleged "faulty" report "fortuitously further[ed] the tortious purpose of another." (d/e 25, p. 12). This argument depends on Dr. Obaisi's knowledge and intent, neither of which can be determined at the notice pleading stage. Plaintiff alleges that Dr. Obaisi intentionally fabricated a medical report to undermine Plaintiff's allegations of assaults, with the purpose of assisting Defendants with a scheme to cover up the assaults and retaliate against Plaintiff. Plaintiff may allege knowledge, malice, intent, and other conditions of the mind generally. Fed. R. Civ. P. 9(b). Whether Plaintiff will have evidence to prove these allegations is another matter.

IT IS THEREFORE ORDERED:

1) Dr. Obaisi's motion to dismiss is denied (d/e 24).

2) The motion to dismiss by Defendants Bender, et al., is denied (d/e 19).

3) The parties' joint, proposed discovery plan is adopted (d/e 27),

except that the proposed trial date does not give the Court enough time to rule on dispositive motions. The final pretrial conference is set for January 7, 2014 at 1:30 p.m. by personal appearance of counsel. The proposed, agreed final pretrial order is due December 21, 2013. The jury selection and trial are scheduled on the Court's trailing trial calendar for February 5, 2014. The actual date for jury selection and trial will be determined at the final pretrial conference.

4) The status conference scheduled for July 2, 2012 is cancelled as unnecessary.

ENTERED:     June 27, 2012

FOR THE COURT:

                    s/Sue E. Myerscough
                    SUE E. MYERSCOUGH
                    UNITED STATES DISTRICT JUDGE